**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| XOCKETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC. and AMAZON WEB SERVICES, INC. <br><br> Defendants. | Civil Action No. 1:25-cv-01021-RP |

**[PROPOSED] <u>PROTECTIVE ORDER</u>**

WHEREAS, Plaintiff Xockets, Inc. ("Xockets") and Defendants Amazon.com, Inc. and Amazon Web Services, Inc. ("Amazon"), hereafter referred to as "the Parties," believe that discovery in this case will involve the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.    Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). The Party producing the Protected Material shall designate it as such by clearly affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL,"

"CONFIDENTIAL – ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – SOURCE CODE". The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" (with the appropriate further designation) shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

2.     Any document produced before issuance of this Order with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order and any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only" shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3.     With respect to documents, information, or material designated "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE," individually and collectively.

information, and/or materials and things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; (e) stipulations; and (f) discovery responses including responses to interrogatories or requests for admission.  All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.   A designation of Protected Material (*i.e.*, "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") may be made at any time.  Inadvertent or unintentional production of documents, information, or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment.  Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s) as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated.   The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

5.      "CONFIDENTIAL" documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 21 herein:

(a) Outside counsel of record in this Action for the Parties ("Outside Counsel").

(b) Employees of such Outside Counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action.

(c) Up to five (5) in-house counsel (including their paralegals and support staff) for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting the Parties' Outside Counsel in the litigation of this Action, provided that such in-house counsel have completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party at least 10 business days before access to the Designated Material is to be given to allow time for an objection to be lodged. Any such objection should be made within 5 business days after service of the Undertaking. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the objection being lodged, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order, or unless the objecting Party fails to file a motion within the prescribed time period.

(d) Outside consultants or experts retained for the purpose of this Action, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action; and (2) before access is given, the consultant or expert has completed the Undertaking attached as Appendix A hereto[2] and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert, including a list of other cases in which the individual has provided a report or testified (at trial or deposition) and a list of companies that the individual has been employed by or provided consulting services pertaining to the field of the invention of the patent(s)-in-suit or the products accused of infringement within the last four years and a brief description of the subject matter of the consultancy or employment, at least ten (10) business days before access to the Designated Material is to be given to that consultant or expert so as to allow the producing Party time to object and notify the receiving Party in writing that it objects to disclosure of Designated Material to the consultant or expert. Any objection to the disclosure should be made within 5 business days

---

[2] The five Lumenci consultants identified by Xockets consultants who signed a version of Appendix A expressing an intent to be bound prior to entry of this Order shall be bound by this Order as if they had signed Appendix A after the entry of this Order.

after receipt of the Undertaking and all other information required to be disclosed under this subsection.

For the avoidance of doubt, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel. Any such personnel need not be disclosed pursuant to this Paragraph 5(d) except for any such personnel that are assisting in analyzing Source Code Material, as provided in paragraphs 12-14. Otherwise, disclosure to a consultant or expert who employs others within his or her firm to help in his or her work on this Action shall count as a disclosure to a single consultant or expert for the purposes of this Order.

The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the Undertaking, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order, or unless the objecting Party fails to file a motion within the prescribed time period.

(e) Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, mock jurors, mediators and supporting personnel, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action.

(f) The Court and its personnel.

(g) The author or recipient of such Designated Material, including but not limited to during their deposition or trial testimony.

(h) Current employees or Rule 30(b)(6) designees of the producing Party.

6.    A Party shall designate documents, information, or material as "CONFIDENTIAL" or higher only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

7.    Documents, information, or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED

MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose.  Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIAL and subject to all of the terms and conditions of this Order.

8.  To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes Source Code Material as defined in paragraph 12 below the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9.  For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a)-5(h), except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 21 herein.  Material designated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY" shall be subject to the Prosecution Bar set forth in paragraph 15.

10.  To the extent a producing Party believes that certain Protected Material qualifying as CONFIDENTIAL - ATTORNEYS' EYES ONLY contains highly sensitive information that warrants additional protections such as highly sensitive trade secrets or other protectable confidential interests or believes that such information is subject to federal,

state or foreign Data Protection Laws or other privacy obligations, the producing Party may designate such Protected Material as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY."  Material designated as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" shall be subject to the Prosecution Bar set forth in paragraph 15.

11. For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a)-5(b) and 5(d)-5(h), except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 21 herein.

12. To the extent a producing Party believes that certain Protected Material includes computer code and associated comments and revision histories, formulas, engineering specifications, process flows or schematics that define or otherwise describe in detail the algorithms or structure of the source code, including but not limited to any code, scripts, assembly, binaries, firmware, object code, source code, source code or object code listings, layouts, Hardware Description Language (HDL) or Register Transfer Level (RTL) files, files containing source code in C, C++, Java, assembler, VHDL, Verilog, and other similar programming languages, "make" and "build" files, link files, scripts, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, microcontroller, or digital signal processor (DSP), any human-readable programming language text that defines software, firmware, or electronic hardware descriptions, any net lists and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE." Source Code Material designated as "CONFIDENTIAL – SOURCE CODE" shall be subject to at least all of the protections

afforded to "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" information, including the Prosecution Bar set forth in paragraph 15.

13. For Protected Material designated CONFIDENTIAL - SOURCE CODE, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a)-5(b) and 5(d)-5(f) (except for mock jurors, to whom CONFIDENTIAL - SOURCE CODE designated material may not be disclosed) and employees of the producing Party who have access to the CONFIDENTIAL - SOURCE CODE material as part of their job or Rule 30(b)(6) designees of the producing Party designated specifically to speak about the CONFIDENTIAL - SOURCE CODE material.

14. For Protected Material designated CONFIDENTIAL - SOURCE CODE, the following additional restrictions apply:

   a. Access to source code shall be provided, at the producing Party's election, (1) on one or more secured computers having disk encryption and password protection in a secured room without Internet access or network access to other computers, such that all persons entering the secured room containing the source code are subject to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the secured room; or (2) on one or more networked computers configured to connect (via a Virtual Private Network or Virtual Network Computing connection) to a source code review environment hosted on a remote server maintained by the producing Party. Both the (1) secured computers and (2) the networked computers are referenced herein as "Source Code Computer."[3]

   b. The producing Party shall ensure that the Source Code Computer is set up to allow for efficient review of the source code, including providing two external monitors, a mouse, a keyboard, and sufficient processing power, memory, and network connection (to the extent a networked computer is provided) to ensure reasonably fast loading, searching, indexing, and review. Use or possession of any input/output device (*e.g.*, USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing the Source Code Computer in the secured room. The receiving Party shall

---

[3] Plaintiff and Defendants have agreed to each make available two Source Code Computers to facilitate source code review in this matter.

not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.

c.  Defendants' Source Code Computer will be available at the Los Angeles, California office of Hueston Hennigan LLP. Xockets' Source Code Computer will be available at the Newport Beach office of Irell and Manella.  The producing Party shall be entitled to have a person observe all entrances and exits from a viewing room, and shall be entitled to visually inspect and monitor the printer connection to the Source Code Computer. Except as authorized under Paragraph 14(h) below, a reviewer may not remove any printed copies of source code from the source code review room. If any individual inspecting Source Code Material seeks to take notes, all such notes will be taken by hand in bound (spiral or other type of permanently bound) notebooks or on a laptop. A reviewer may not copy or photograph portions of the Source Code Material into the reviewer's notes in an effort to circumvent any printing limitations set forth herein. Any such notes must be marked on each page with "CONFIDENTIAL - SOURCE CODE." A reviewer of a receiving Party may not leave work product or other materials to which the receiving Party claims privilege in the room used to inspect the producing Party's Source Code Material or on a producing Party's Source Code Computer. During review, the receiving Party shall not bring in their own computers or other electronic devices capable of accessing the internet into the room where the Source Code Computer is located.

(d) Any source code produced in discovery shall be made available for inspection in a format allowing it to be reasonably reviewed and searched, during normal business hours (generally, 9:00 am -5:00 pm).  Upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the Source Code Computer outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the domestic offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(e) The Source Code Computer shall contain tools used for viewing, searching, indexing, comparing, and printing the Source Code, as applicable, including e.g., Cygwin (with standard Unix tools), PDF viewing software, word processor software (e.g., Microsoft Word), screenshot software (e.g., Microsoft Snipping Tool), and any configuration and text files needed to allow the receiving Party to view and search the Source Code Computer. The Source Code Computer shall include at least one text editor like Notepad++ (if Windows based) that is capable of printing out programming language text of Source Code with page and/or line numbers in either hard-copy or as a PDF, a source code comparison tool like WinMerge, and at least one multi-text file text search tool such as "grep." The receiving Party's outside counsel and/or experts may request that other commercially available software tools consistent with the purpose of this paragraph be installed on the Source Code Computer, provided, however, that the software does not compromise security of the Source Code Computer. Upon request by the producing Party, the receiving Party shall provide to the producing Party the

commercially available software tools (including any necessary licenses) to be used on the Source Code Computer. To the extent that tools on the Source Code Computer record local working files or other records reflecting the work performed by the receiving Party, such files and records shall not be reviewed, altered, or deleted by the producing Party. The producing Party may object to any software tools requested by the receiving Party, including on the grounds that such software would compromise security or is not reasonably related to a proper source code review.

(f) The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

(g) Access to Source Code Material shall be limited to outside counsel and up to four (4) outside consultants or experts[4] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the producing Party with reasonable specificity) retained for the purpose of this litigation and approved to access such Designated Materials pursuant to paragraph. A receiving Party may include excerpts of Source Code Material in an exhibit to a pleading, expert report, discovery document, or deposition transcript (collectively, "Source Code Exhibits"), provided that the Source Code Exhibits are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures, and orders.

h. The Source Code Computer will be made available upon reasonable notice to the producing Party, which shall not be less than 10 business days in advance of the initial requested inspection. Following the initial inspection, the receiving Party must give notice at least 48 hours (and at least two business days) in advance of additional review. The source code review room shall be large enough to accommodate at least three reviewers, and the producing Party shall make reasonable efforts to provide a separate breakout room near the review room. The producing Party may visually monitor the activities of the receiving Party's representatives in the review room during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code. For avoidance of doubt, the producing Party's right to visually monitor the activities of the receiving Party does not include listening in on privileged communications between the receiving Party's representatives, continuously monitoring the screen of the Source Code Computer while the receiving Party is actively reviewing source code, looking at the receiving Party's or its experts'

---

[4] For the purposes of this paragraph, and subject to the other provisions of this Order including the Export Control provision, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the analysis of Source Code Material shall be disclosed pursuant to Paragraph 5(d).

notes, or otherwise attempting to gain access to or review the receiving Party's or its experts' work product.

(i)     The receiving Party's outside counsel and/or expert shall be entitled to take notes relating to the source code but may not copy any portion of the source code into the notes, with the exception of file names, file locations (i.e., directory paths), class names, function names, version information, and relevant line numbers which may be copied into the notes. No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein. Any handwritten notes or other work product created by the receiving Party reflecting Source Code shall be marked as "CONFIDENTIAL – SOURCE CODE." Further, no other written or electronic record of the source code is permitted except as otherwise provided herein.

j.      No person shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated "CONFIDENTIAL - SOURCE CODE" material, except that, subject to the limitations below, the receiving Party may print limited portions of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not print paper copies for the purpose of reviewing the source code.

There are two methods for printing that may be used at the producing Party's discretion:

1. If the receiving Party would like to have a portion of Source Code printed, the receiving Party will save an image or PDF that will be printed by the producing Party. The producing Party will print hard copies of those files to include Bates numbers and the label "CONFIDENTIAL – SOURCE CODE." If the receiving party includes the full directory path of the file from which the portion of Source Code Material is selected in the saved image or PDF, the producing Party shall print such information in the printed hard copies.

2. The producing Party may make available a color laser printer with commercially reasonable printing speeds for on-site color printing during inspections of the Source Code. The producing Party shall provide paper for use in printing Source Code, pre-marked to include bates numbers and the label "CONFIDENTIAL – SOURCE CODE." The producing Party shall keep the originals of the printed Source Code, and color copies shall be made for the receiving Party.

Any watermarks or labels on the printouts shall not obscure any portion of the Source Code Material or otherwise interfere with its readability. At the receiving Party's election, printouts shall be mailed to the receiving Party using overnight delivery within four business days of the print request.

k.  Except as otherwise provided herein, no more than 500 pages of the total Source Code for any single version of source code produced for a product (e.g., a version of an accused product) may be requested in printed form. Additionally, except as otherwise provided herein, the receiving Party shall not request to print out any continuous block of Source Code that results in more than twenty-five (25) consecutive printed pages.  These limits may be increased by written agreement of the Parties or on a showing of substantial need by the receiving Party. At the receiving Party's request, up to four sets (or subsets) of printed source code may be requested and provided by the producing Party in a timely fashion.

The producing Party may challenge the amount of source code requested in hard copy form or whether the source code requested in hard copy form is reasonably and substantially necessary to any case preparation activity.  If the producing Party believes, in good faith, that the print request is not reasonable, the producing Party shall provide notice of its objection within four (4) business days of the print request. In the event of a dispute, the Parties will meet and confer within three (3) business days of the objection being raised and if they cannot resolve such dispute, the producing Party shall raise it with the Court by no later than five (5) business days following the Parties' meet and confer. Contested printouts do not need to be produced to the receiving Party until the matter is resolved by the Court; however, this provision cannot be used as a mechanism to delay production of printouts that are within these limits.

l.  Any printed pages of source code, and any other documents or things reflecting source code that have been designated by the producing Party as "CONFIDENTIAL - SOURCE CODE" may not be printed, copied, or otherwise provided, except as reasonably necessary for (1) the preparation of court filings, pleadings, or other papers (including a testifying expert's expert report), (2) deposition or trial, or (3) the preparation of its case. Any paper copies used during a deposition shall be retrieved by the receiving Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual. To the extent portions of Source Code are quoted in a court filing, the party quoting the Source Code shall quote only such portions as necessary to establish their point. Either (A) the entire document will be stamped and treated as "CONFIDENTIAL –SOURCE CODE"; or (B) those pages containing quoted Source Code will be separately stamped and treated as "CONFIDENTIAL – SOURCE CODE." Any materials (e.g., pleadings, motion briefing, expert reports, discovery responses, etc.) that refer to, quote, or otherwise reference or describe Source Code shall be labeled as "CONFIDENTIAL –SOURCE CODE."

m.  All persons who seek to review a producing Party's Source Code on behalf of a receiving Party, including a receiving Party's outside counsel, shall be identified in writing to the producing Party at least 10 business days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any other disclosure required under this Order. The receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form.

n.    The receiving Party shall maintain all printed portions of the source code in a secured, locked area under the direct control of counsel responsible for maintaining the security and confidentiality of the designated materials. Any paper copies designated "CONFIDENTIAL - SOURCE CODE" shall be stored or viewed only at (i) the offices of outside counsel for the receiving Party; (ii) the offices of outside experts or consultants who have been approved to access source code; (iii) the site where any deposition is taken; (iv) the Court; (v) any intermediate secured location in a locked container necessary to transport the information to a hearing, trial, or deposition; or (vi) any intermediate reasonably secure location where the receiving Party's outside counsel, experts, or consultants are preparing for a hearing, deposition, or trial (e.g., a private hotel room or conference room).

o.    The parties will meet and confer regarding how to handle treatment of Source Code Material at depositions.

15.    Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive any other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to (1) the fields of the inventions of the patents in suit; (2) Data Processing Units[5] (i.e., programmable processors with hardware acceleration technology using one or more processors for offloading, accelerating, and isolating workloads from CPUs, GPUs, or other server processors in a server system); or (3) the use of Data Processing Units in connection with networks of servers in data centers or with machine learning or artificial intelligence during the pendency of this Action and for one year after its conclusion, including any appeals. To

---

[5] The presence of this term and definition in this Order shall not be construed as an acquiescence to the term or definition by any party or otherwise used to support any argument concerning the merits of the parties' disputes.

ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to categories (1)-(3) listed above.  Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).

16. Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity in this case or in any other proceeding.  Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material.  The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

17.    There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

18.    Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to such DESIGNATED MATERIAL under Paragraphs 5-14 of this Order. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

19.    Parties may, at the deposition or hearing or within ten (10) days after receipt of a final deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" pursuant to this Order.  Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.  Until expiration of the 10-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY".

20.    Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court.  The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing.  Exhibits to a filing shall conform to

the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

21. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court. The parties will further meet and confer regarding use of DESIGNATED MATERIAL at trial.

22. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) business days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall apply. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

23. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

24.   To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," and/or "CONFIDENTIAL - SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties, and such material shall be treated accordingly under this Order.  The Third Parties shall designate any such documents or materials before production, or in the case of deposition testimony, shall have ten (10) days after receipt of the final transcript to make such a designation.  Until that time period lapses or until such a designation has been made, whichever occurs sooner, any Third Party deposition testimony shall be treated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" in accordance with this Order.

25.   Within sixty (60) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed.  The receiving Party shall certify the return or destruction by written certification furnished to the producing Party, upon the producing Party's request. Outside counsel for the Party or Parties receiving Protected Material may retain a copy of all pleadings, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), trial transcripts, exhibits offered or introduced into evidence at trial, and any work-product or communications containing DESIGNATED MATERIAL, provided however that any

DESIGNATED MATERIAL contained in any such documents retained by Outside Counsel of record shall remain subject to the protections of this Order. The Parties shall not be required to return or delete information that may reside on their respective Parties' firms' or vendors' electronic disaster recovery or archive systems or information that may reside in electronic files which are not reasonably accessible. No person shall be required by this Order to return or destroy information they are required by law to retain.

26. The provisions of this Order shall continue to be binding after final termination of this case until a Producing Party agrees otherwise in writing or a court order otherwise directs.

27. The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

28. Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

29. Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void

or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

30.    Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

30.    Nothing in this order shall be construed to prejudice any Party's right to use any Protected Material (subject to any sealing requirements) in court or in any court filing with the consent of the producing Party or by order of the Court.

31.    The Parties agree that drafts of any expert report, declaration, or disclosure, as well as any notes made by experts, are protected work product and shall not be discoverable regardless of the form of the draft and notes, unless the expert relies on the aforementioned as a basis for his or her opinion and the information contained is not otherwise disclosed. The parties further agree that communications of any form relating to this action between (a) a party to these actions, a representative of a party, or the parties' attorneys, and (b) the parties' expert(s), whether testifying or non-testifying, are protected work product and shall not be discoverable, except to the extent the communications identify facts, data, or assumptions that the parties' attorneys provided and that the expert(s) relied upon in forming any opinions expressed or to be expressed in an expert report or trial testimony and are not otherwise disclosed.

32.    Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

33.     **Export Control**:    HIGHLY SENSITIVE MATERIAL (i.e., materials designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," and/or "CONFIDENTIAL – SOURCE CODE") shall be subject to all applicable laws and regulations relating to the export of technical data contained in such information, including the release of such technical data to foreign persons or nationals in the United States or elsewhere.[6] Each party receiving HIGHLY SENSITIVE MATERIAL shall comply with all applicable export control statutes and regulations. *See, e.g.*, 15 CFR § 734.3. HIGHLY SENSITIVE MATERIAL shall not be made available except to a person covered by 15 C.F.R. § 772.1(a)(1)[7] (hereafter, "U.S. Person"). U.S. Persons with access to HIGHLY SENSITIVE MATERIAL shall not (i) transport it to any country other than the United States or (ii) access it from any country other than the United States.[8] Without limitation, this prohibition extends to DESIGNATED MATERIAL (including copies) in any form, including, but not limited to, physical, verbal, and electronic form. Notwithstanding this prohibition, and to the extent otherwise permitted by law (including any applicable export control statutes or regulations), HIGHLY SENSITIVE MATERIAL may be taken outside the territorial limits of the United States if it is reasonably necessary for a deposition taken in a foreign country.   Additionally, to the extent that outside counsel of record travel outside the

---

[6] Applicable export restrictions may include, without limitation, those specified for ECCN 3A001, 3A991, 3E001, 3E991, 4E001, 5A002, 5D002, and/or 5E002 in Supplement No. 1 to Part 774 of the Code of Federal Regulations.

[7] This subsection states that U.S. Persons includes, "[a]ny individual who is a citizen of the United States, a permanent resident alien of the United States, or a protected individual as defined by 8 U.S.C. 1324b(a)(3)."

[8] If documents produced before the entry of this Protective Order have been stored by a receiving Party in a manner that does not comply with this provision, such party shall have 30 days to achieve compliance with this order with respect to such documents.

territorial limits of the United States with their personal electronic devices, including laptops and/or cellphones, or review their electronic mail while traveling abroad, such outside counsel of record must ensure that no exported controlled technology is released to foreign persons without authorization and that such activities are otherwise permitted by applicable export control laws and regulations. The restrictions contained within this paragraph may be amended through the consent of the producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations. Nothing in this paragraph authorizes the violation of export control laws and regulations or disclosure of DESIGNATED MATERIAL to a person or entity who is not otherwise authorized to receive it.

34. **Artificial Intelligence:** Should a Party elect to utilize artificial intelligence ("AI") to assist in reviewing, analyzing, or summarizing discovery material produced or exchanged in this litigation, the Party shall take all necessary steps to ensure that the application, service, or analytical software is fully containerized. "Fully containerized," as used in this Order, means an AI tool that does not retain the substance of a prompt or documents reviewed, share the substance of a prompt or documents reviewed for training of large language models, or use the substance of a prompt or documents reviewed in any other matter or inquiry other than these Actions. For the avoidance of doubt, this restriction expressly applies to the use of non-containerized advanced large language models, generative AI tools, and other advanced AI systems, including, but not limited to, OpenAI, Gemini, LLAMA, MidJourney, and Stable Diffusion, but this provision does not limit the use of services leveraging the technology underlying these generative AI tools in a fully containerized environment, including, but not limited to, Copilot, Harvey, Relativity aiR,

DISCO Cecelia, Everlaw AI, Syllo, Alchemy, Lexis+ AI, Epiq AIDA, and Lighthouse AI. Before submitting any DESIGNATED MATERIAL to a fully containerized AI tool, a Receiving Party shall ensure that it (or its vendor) can delete all such DESIGNATED MATERIAL from the AI tool at the conclusion of this matter, including any derivative information stored within the tool. To be clear, any person or entity in possession of DESIGNATED MATERIAL produced or exchanged in this litigation shall not submit such DESIGNATED INFORMATION or summary thereof to any open Generative AI tool that is available to the public, so that the DESIGNATED MATERIAL is not further disclosed or used in any manner inconsistent with this Order. The obligations and restrictions of this paragraph apply even where the DESIGNATED MATERIAL has been anonymized.

35. **Data Breach:** In the event any receiving Party (including without limitation their attorneys, vendors, experts, or other person or entity subject to this Protective Order) encounters a data breach affecting a producing Party's DESIGNATED MATERIAL, the Parties shall reasonably cooperate in investigating any apparent unauthorized access or breach of DESIGNATED MATERIAL.  Any receiving Party who experiences a data breach affecting producing Party's DESIGNATED MATERIAL shall reasonably provide written notice of the breach to the other Parties as soon as is practicable and in no event later than 14 days from obtaining knowledge of the breach.  For purposes of this Order, a "data breach" includes without limitation unauthorized access to, copying, encryption (e.g., ransomware), or exfiltration of a producing party's DESIGNATED MATERIAL.

36. If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any DESIGNATED MATERIAL of any other Party, the Party who received

the subpoena must:

a.  Promptly notify in writing the producing Party.  Such notification shall include a copy of the subpoena or court order;

b.  Promptly notify in writing the Party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Protective Order; and

c.  Cooperate with respect to all reasonable procedures sought to be pursued by the producing Party whose DESIGNATED MATERIAL may be affected.

d.  If the producing Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any DESIGNATED MATERIAL before a determination by the court from which the subpoena or order issued, unless the Party has obtained the producing Party's permission.  The producing Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

**SIGNED** this _____ day of _____, 2026.


_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| XOCKETS, INC.,<br><br>                   Plaintiff,<br><br>        v.<br><br>AMAZON.COM, INC. and AMAZON WEB SERVICES, INC.<br><br>                   Defendants. | Civil Action No. 1:25-cv-01021-RP |

**APPENDIX A
UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING
PROTECTIVE ORDER**

I, _____ , declare that:

1.     My address is _____ .

       My current employer is _____ .

       My current occupation is _____ .

2.     I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.     I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that is disclosed to me.

4.    Promptly upon termination of these actions, to the extent required by the Protective Order in this action, I will return (or destroy) all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the Party by whom I am employed.

5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____